IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NUMBER: 1:19-cv-1047

| | |
|---|---|
| KATHLEEN ANDERSON BASTIN, )<br>          *Plaintiff*, )<br>)<br>)<br>    v. )<br>)<br>)<br>PINNACLE FINANCIAL PARTNERS, INC., )<br>("PINNACLE") )<br>          *Defendant*. ) | *COMPLAINT*<br>*(Jury Trial Requested)* |

1.

This action is brought by a female citizen of Guilford County, North Carolina. Plaintiff seeks compensation from the Defendant for maintaining a policy, practice, custom or usage of discriminating and retaliating against Plaintiff for exercising her rights under Title VII of the Civil Rights Act of 1964, and as amended in 1991 and the Age Discrimination in Employment Act ("ADEA") with respect to compensation, terms, conditions, promotions, and privileges of employment in ways which deprived Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an employee.

2.

At all times alleged herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f). The Plaintiff further contends that at all times alleged herein, Defendant Pinnacle was an "employer" within the meaning of 42 U.S.C. § 2000e(f).

1

3.

Based upon information and belief, the Defendant Pinnacle is a financial services corporation qualified to do business in Guilford County, and the state of North Carolina; and, has its principal place of business in Nashville, Tennessee.

4.

Defendant Pinnacle is a financial services corporation engaged in an industry that affects commerce and employs more than twenty (20) employees.

5.

The unlawful practices alleged herein were committed within the State of North Carolina; specifically in Guilford County, North Carolina.

6.

At all times alleged herein, the Plaintiff was over the age of forty (40) years.

7.

The Plaintiff contends that the constitutional and statutory violations alleged herein arose from the Defendant's official policy or custom of engaging in, condoning or failing to address issues of discrimination within its workplace.

8.

The Plaintiff was originally hired by Don Draughn from Bank of North Carolina ("BNC") on October 6, 2014 to the position of Vice President, Managing Director of Corporate Finance Advisors located in Greensboro, North Carolina where she was primarily responsible for originating multifamily and commercial mortgage loans.

9.

Throughout the Plaintiff's employment with BNC, she was a high performer and received good performance evaluations.

10.

Based upon information and belief, BNC and Pinnacle Financial Partners merged on June 15, 2017.

11.

On or about February 28, 2017, the Plaintiff was informed by BNC's Regional Market President that her position was being eliminated due to the aforementioned merger. The Plaintiff's employment was terminated with BNC on June 15, 2017.

12.

On approximately May 16, 2017, the Plaintiff interviewed with Frank Stallworth, Manager of Pinnacle's Commercial Real Estate Group. During the interview, Stallworth stated to the Plaintiff in the context of her employability, "I know I'm not supposed to ask, but are you married?" The Plaintiff contends that in asking, Stallworth implied that as a married woman, she may have a different standard than would a married man regarding certain aspects of work. The Plaintiff informed Stallworth that she was able to meet the requirements for the position. Further, the Plaintiff and Stallworth discussed and agreed to a pay structure which consisted of both salary and commission.

13.

Thereafter, the Plaintiff accepted the position of Financial Advisor working under Stallworth's supervision. The position was similar to the Plaintiff's previous position with BNC in that she would be handling the origination of multifamily and commercial loans. Stallworth advised

Plaintiff that Pinnacle would provide her a variety of loan programs not available to her at BNC; such as life companies, Freddie Mac conventional and Freddie Mac-SBL. He requested that she focus on SBL production, but not to the exclusion of other production.

14.

The Plaintiff contends that on approximately June 15, 2017, Stallworth unilaterally changed her agreed upon pay structure in his written offer of employment. Shortly thereafter, Stallworth likewise unilaterally changed the Plaintiff's target markets. In approximately July or August, 2017, Stallworth required the Plaintiff to transfer all of her commercial business without compensation to the commercial group which consisted of male employees. Further, all of these changes were financially detrimental to the Plaintiff.

15.

As a result of the foregoing, the Plaintiff requested permission from Stallworth to create correspondent relationships in her new markets to enable her to work with local banks and credit unions that were unable to meet the long-term lending needs of their clients. Stallworth denied the Plaintiff's request on multiple occasions, and indicated that the Plaintiff would be getting SBL transfers and referrals from her male counterparts.

16.

The Plaintiff later learned that the SBL loans had not been transferred or referred to her. Rather, at Stallworth's instruction, they had been transferred to her younger male coworkers.

17.

The Plaintiff contends that in approximately October, 2017, Stallworth excluded her from attending the Freddie Mac Multifamily Annual Customer Conference. At the time Stallworth excluded the Plaintiff from the conference, Stallworth was aware that the Plaintiff needed to

attend the conference so that she could meet the Freddie Mac representatives with whom she worked, get first-hand information as to the program updates and to take part in teambuilding along with her male counterparts. The Plaintiff further contends that based upon information and belief, no female had ever represented the Defendant at the aforementioned conference and consistent with this history, only males attended the conference in 2017.

18.

The Plaintiff contends that while working under Stallworth's supervision, she was never given specific written goals or a specific job description in accordance with the Defendant's policy. Further, target markets, loan products and loan sources were all changed by Stallworth resulting in unrealistic, constantly changing goals for her. The Plaintiff further contends that none of her younger male counterparts were subjected to the same treatment or conditions of employment.

19.

The Plaintiff contends that in July, 2017 she received SBL correspondent data which indicated that her male coworkers had much larger territories, along with thirty-five (35) or more mortgage brokers and/or correspondents. Consequently, on average, the Plaintiff's younger male coworkers had no, or fewer, work limitations which ultimately exposed them to higher earnings potential than she. The Plaintiff was limited to ten (10) territories and was not allowed to select the territories which she would be assigned. Further, the male employees were given deference for which territories they selected for assignment.

20.

At all times alleged herein, the Plaintiff's male co-workers working under Stallworth's supervision, with the same or substantially similar job responsibilities as the Plaintiff, were treated more favorably than she with regard to conditions of employment which enabled them to

5

earn more money and advance their careers. Furthermore, because Stallworth required the Plaintiff to transfer her commercial clients and loans to her male coworkers, the Plaintiff did not receive credit for the loans nor did Stallworth adjust his job expectations for the Plaintiff.

21.

At all times alleged herein, the Plaintiff's male coworkers did not refer any SBL loans to her as Stallworth had allegedly instructed them to do. Further, Stallworth was aware that the Plaintiff's male coworkers did not refer any SBL loans to the Plaintiff but did nothing to assure that they would. As a result, the Plaintiff sent loans in excess of one hundred (100) million dollars resulting in potential bank profits of more than a million dollars to her younger male coworkers for which they received credit.

22.

On approximately December 10, 2017, Stallworth called the Plaintiff and said, "this isn't working, is it?" The Plaintiff requested that Stallworth allow her to work different markets, specifically the markets she had originally proposed and where she had contacts to establish correspondent relationships like her male counterparts. However, Stallworth denied the Plaintiff's request, instead requiring her to manage two (2) markets that had been historically unproductive.

23.

On approximately December 15, 2017, the Defendant announced in a news release that a new male employee had joined the Defendant company. Unlike the Plaintiff, this male employee was given the opportunity to meet with the leadership of the Defendant company and attend an upcoming conference. Other younger, male counterparts had also been allowed the same opportunities. The Plaintiff contends that she was denied these opportunities due to her age

6

Case 1:19-cv-01047-CCE-JLW    Document 1    Filed 10/14/19    Page 6 of 12

and/or gender.

24.

The Plaintiff contends that under Stallworth's leadership and supervision, Stallworth and her male counterparts also treated her differently and harsher than male employees. For example, they refused to provide her with essential work-related materials and staff support that she needed to work proficiently. This included, but was not limited to, refusing to provide her with critical customer data and information on handing loan inquiries for clients, predicating the necessary exchange of information upon the Plaintiff's agreement to provide information solely for their financial benefit, belittling the Plaintiff's role in procuring loans, purposely failing to reciprocate client referrals and transfers, failing to provide her with important materials presented at conferences she was not allowed to attend, failing to publish weekly flyers for her to send to clients, and refusing to allow her to call on mortgage bankers and contacts outside her territories.

25.

The Plaintiff contends that her male counterparts were allowed to work in her markets and directly with owners; whereas, she was not allowed to do so.

26.

The Plaintiff contends that Stallworth worked closely with her male counterparts and was available to them for discussions, calls, mentoring and other training which increased their work opportunities, income and productivity. Stallworth also talked to the Plaintiff in a demeaning manner which was different than the manner in which he spoke to the male counterparts.

27.

As a result of the foregoing, on approximately January 16, 2018, the Plaintiff submitted a written complaint to Patti Harris, Vice President and Human Resources Manager, wherein she stated that she was the victim of discriminatory treatment by Stallworth. The Plaintiff requested that her complaint be kept confidential and not shared with Stallworth for fear of reprisal. Harris assured the Plaintiff that her complaint would be kept strictly confidential, that she would review the complaint and discuss it with the Plaintiff before any further action was taken. In the complaint, the Plaintiff stated that she felt she had been treated differently than her male coworkers with regard to work opportunities, not paid properly, and denied income generating opportunities based on her age and gender.

28.

Notwithstanding the aforementioned promises made by Harris to the Plaintiff, the Defendant released the Plaintiff's written complaint to Stallworth and no substantive investigation was conducted thereafter.

29.

The Plaintiff contends that Stallworth, after learning of her complaints of discrimination against him, retaliated against her by continuing to discriminate against her and harass her. Rather than realign the Plaintiff's reporting relationship from Stallworth to another supervisor, the Defendant continued to require the Plaintiff to work under Stallworth's supervision.

30.

As a result of the Defendant's failure to take prompt remedial action against Stallworth or present the Plaintiff with prompt and reasonable resolutions, the Defendant did nothing. Thus, the Plaintiff felt forced to resign her position on January 26, 2018.

31.

The Plaintiff contends that during her employment, she was the only female production member of her team over the age of forty (40). The Plaintiff further contends that her pay structure was solely based on commission; whereas her male counterparts had a pay structure consisting of salary plus commission and bonuses, which resulted in higher pay for the male counterparts.

32.

The Plaintiff contends that she timely submitted charges of discrimination on the basis of age and gender discrimination, and retaliation to the Equal Employment Opportunity Commission (EEOC). Said Charge Number is 430-2018-02581. The Plaintiff further contends that on or about July 15, 2019, the EEOC mailed the Plaintiff a notice of right to sue letter related to the aforementioned charge. A copy of the notice is attached hereto and incorporated in this Complaint.

33.

The Plaintiff contends that she was constructively discharged, having been forced to resign or continue to work in a discriminatory and retaliatory environment controlled by her assailant.

34.

The Plaintiff contends that Stallworth preferred working with men, encouraged and supported her male counterparts, while ignoring and undermining her efforts to succeed in the workplace. The Plaintiff contends that her reason for resigning employment was to escape a hostile, discriminatory and retaliatory work environment when her employer failed to take remedial measures after having received notice that such conduct permeated her work environment.

35.

The Plaintiff contends that Defendant's illegal objective of constructive discharge was for discriminatory and retaliatory reasons in violation of Title VII of the Civil Rights Acts and the ADEA.

36.

The Plaintiff contends that the employee responsible for her constructive discharge, including Stallworth, was aware that she had engaged in protected activity by articulating her opposition to discriminatory treatment in the workplace due to her age and gender. The Plaintiff further contends that those employees engaged in acts or actions intended to cause her to resign in retaliation for her engaging in said protected activity and/or because of her age and/or gender.

37.

The Plaintiff contends that there is a causal connection between her participation in protected activity and the adverse employment action she was subjected to, including but not limited to, constructive discharge.

38.

The Plaintiff contends that all supervisors, employees and co-workers were, at all times herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondent superior, Defendant is vicariously liable for acts herein alleged against those co-workers, employees and supervisors. Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment. Plaintiff alleges that the employer remains liable for its negligent supervision and retention of those employees.

39.

As a result of the aforementioned acts, the Plaintiff contends that she has suffered pecuniary and non-pecuniary losses, including but not limited to, humiliation, loss wages, loss benefits, future wages, mental anguish, physical sickness and personal injuries, and pain and suffering.

## COUNT ONE

The Defendant is liable to the Plaintiff for retaliating against her for engaging in protected activity and for opposing practices made unlawful pursuant to Title VII of the Civil Rights Act of 1964, and as amended in 1991.

## COUNT TWO

The Defendant is liable to the Plaintiff for disparate treatment and constructive discharge due to age discrimination in violation of the ADEA.

## COUNT THREE

The Defendant is liable to the Plaintiff for disparate treatment and constructive discharge due to gender discrimination in violation of Title VII of the Civil Rights Act of 1964, and as amended in 1991.

**WHEREFORE, Plaintiff prays the Court that it:**

1. Award Plaintiff compensatory damages for pecuniary losses, physical sickness and personal injuries, emotional pain, and mental anguish, together with attorney's fees and the costs and disbursements of this action;

2. Award Plaintiff punitive damages;

3. Award Plaintiff backpay with prejudgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

4. Grant Plaintiff a jury trial on all issues of fact, and;

5. Grant such other relief as may be just and proper.

This the 14th day of October, 2019.

GRAY NEWELL THOMAS, LLP

BY: /s/ Angela Gray
 Angela Newell Gray
 7 Corporate Center Court, Suite B
 Greensboro, NC  27408
 *Attorney for Plaintiff*
 Telephone: (336) 285-8151
 Fax: (336) 458-9359
 E-mail: angela@graynewell.com
 N.C. State Bar #21006

12

Case 1:19-cv-01047-CCE-JLW   Document 1   Filed 10/14/19   Page 12 of 12